IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
| MCC HUMBLE AUTO PAINT, INC., | ) CASE NO. 11-34994-H3-11 |
| Debtor, | ) |

MEMORANDUM OPINION

The court has held an evidentiary hearing on "Creditor Maaco Franchising, Inc.'s Emergency Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1),(2)" (Docket No. 21). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion in part. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

MCC Humble Auto Paint, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 7, 2011.

On July 18, 2006, James M. Gaarder, president of Debtor, entered into a franchise agreement with Maaco Enterprises, Inc., to open a "Maaco Center," defined under the

franchise agreement as a center "specializing in vehicle painting and body repair," in Humble, Texas.  (Movant's Exhibit A).

Gaarder assigned his rights under the franchise agreement to Debtor on July 18, 2006.  (Movant's Exhibit B).

On January 31, 2011, Maaco Franchising, Inc. (purporting to be the entity with which Debtor had a franchise agreement)[1] gave notice to Debtor and Gaarder that they were in default in, <u>inter</u> <u>alia</u>, paying franchise fees due under the franchise agreement.  (Movant's Exhibit D).

On March 11, 2011, Maaco sent to Debtor and Gaarder a notice of termination of the franchise agreement.  (Movant's Exhibit E).  Gaarder testified that he received the notice on March 14, 2011.  Ken Hamill, an employee of Maaco, testified that the franchise was terminated for lack of payment.

The franchise agreement provides in pertinent part:

15.   OBLIGATIONS UPON TERMINATION OR EXPIRATION

Upon termination or expiration of this Agreement:

A.   Franchisee shall immediately cease to operate the business franchised under this Agreement, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Maaco.

B.   Franchisee shall immediately and permanently cease to use, by advertising or in any manner whatsoever, any equipment, confidential methods, procedures and

---

[1] Maaco Enterprises, Inc. and Maaco Franchising, Inc. are collectively referred to for the remainder of this opinion as "Maaco."

>techniques associated with the System; the trade and service mark "Maaco Auto Painting & Bodyworks" or "Maaco Collision Repair & Auto Painting", and any Proprietary Marks and distinctive forms, slogans, signs, symbols, or devices associated with the System. In particular, Franchisee shall cease to use, without limitation, all signs, equipment, advertising materials, stationery, forms and any other articles which display the Proprietary Marks associated with the System.
>
>\* \* \*
>
>17. COVENANTS
>
>\* \* \*
>
>C.  Franchisee covenants that for a period of one (1) year from whichever of the following events occur later: (i) the expiration or termination of this Agreement, regardless of the cause of termination; (ii) the date upon which Franchisee ceases to operate the business franchised hereunder following termination or expiration of this Agreement; or (iii) the date upon which Franchisee complies with this Paragraph 17C., Franchisee shall not either directly or indirectly, for himself or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation:
>
>>(1)  Do or engage in any act prescribed by Paragraphs 17B (1) and (2) of this Agreement, which are hereby incorporated by reference as if more fully set forth herein.
>>
>>(2) Own, maintain, engage in, be employed by, finance, or have any interest in any business providing, in whole or in part motor vehicle painting or body repair services or products at the premises of the Center or within a radius of ten (10) miles of the Center or within a ten (10) mile radius of any existing or proposed Maaco location.

(Movant's Exhibit A).

In the instant motion, Maaco states that on May 11, 2011, it filed suit against Debtor and Gaarder, in the United States District Court for the Eastern District of Pennsylvania, seeking, inter alia, injunctive relief enforcing the covenants of the franchise agreement (the "Pennsylvania Case"). Maaco states that, in the Pennsylvania Case, a preliminary injunction hearing was set for June 7, 2011, the date on which the petition in the instant Chapter 11 case was filed. (Docket No. 21).

Kevin Taylor, a Maaco franchisee in the Houston, Texas area, testified that he visited Debtor's business premises during July, 2011, approximately one month before the date of the hearing on the instant motion. He testified that Debtor had signs on the outside and inside of the building identifying the business as Maaco, and as "America's Body Shop," a Maaco trade slogan. He testified that Debtor's employees were using shirts bearing the Maaco logo, and using business cards with the Maaco logo. He testified that Gaarder maintains a sign on Debtor's truck identifying the business as Maaco. He testified that Debtor is operating two web sites, with Maaco information. He testified that one of the sites directs visitors to Debtor's location. He testified that another site directs visitors to the telephone number Debtor had previously used. He testified that callers to Debtor's previous number are now directed to Taylor's shop. He testified that Maaco reassigned the telephone number

previously used by Debtor to his shop. Hamill testified that, on August 22, 2011, the day of the hearing on the instant motion, Debtor still was using the Maaco signs and identification.

Gaarder testified that Debtor is operating as an independent body shop and paint shop. He testified that Debtor is not operating as a Maaco Center. He testified that Debtor's truck or trucks no longer display Maaco logos and identification. Debtor has changed its telephone numbers, notified banks and vendors, and printed new business cards. He testified that Debtor has purchased new signs, that are not yet installed. He testified that Debtor has updated its website. He testified that the Maaco signs on the building have not been removed because Debtor has not had funds available to pay for their removal.

## Conclusions of Law

In the instant motion, Maaco seeks lifting of the automatic stay, in order to seek an injunction prohibiting Debtor from conducting any operations. Maaco makes two arguments: First, Maaco argues that Debtor lacks a property interest in the franchise agreement, and thus the stay should be lifted because the debtor lacks equity in property necessary to an effective reorganization. Second, Maaco argues that the stay should be lifted for cause, because it is not protected in its intellectual property, consisting primarily of the items identifying Debtor's

shop as a Maaco shop, and in its goodwill, which it asserts is protected by the covenant not to compete.

Section 362(d) of the Bankruptcy Code provides in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> >
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if–
> >
> > > (A) the debtor does not have an equity in such property; and
> > >
> > > (B) such property is not necessary to an effective reorganization;

11 U.S.C. §§ 362(d)(1), 362(d)(2).

Section 362(g) of the Bankruptcy Code provides:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--
>
> > (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
> >
> > (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

Cause is not defined in the Bankruptcy Code, and must be determined on a case by case basis based on an examination of

the totality of circumstances.  In re Reitnauer, 152 F.3d 341, 343 n. 4 (5th Cir. 1998); In re Mendoza, 111 F.3d 1264 (5th Cir. 1997).

In determining whether to lift the automatic stay to allow litigation against a debtor to proceed outside this court, the court considers whether lifting the stay will result in any great prejudice to the debtor or the bankruptcy estate, whether any hardship to a nondebtor of continuation of the stay outweighs any hardship to debtor, and whether the creditor has a probability of prevailing on the merits of the case.  In re Namazi, 106 B.R. 93 (Bankr. E.D. Va. 1989).

With respect to the property argument, Debtor has not asserted a property interest in the franchise agreement. Moreover, the relief sought does not address the stay of an act against property.  Rather, Maaco is seeking to enjoin Debtor from conducting any business at all.  With respect to cause, it is clear that Debtor should not be permitted to use the Maaco name. Gaarder's testimony regarding Debtor's efforts to stop using the Maaco name is credible.  However, it is clear that, to the extent Debtor has not removed the Maaco signs, has not stopped use of business cards and other written documents with the Maaco name, and allows its employees to wear Maaco shirts, there is a substantial risk of harm to Maaco.  However, the hardship to Maaco does not outweigh the hardship to Debtor if it is forced to

close its business entirely.[2] The court concludes that the automatic stay should be conditioned on Debtor's removal of Maaco signs and identification.

Based on the foregoing, a separate Judgment will be entered conditioning the automatic stay.

Signed at Houston, Texas on August 25, 2011.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

---

[2] The court notes that, with respect to the merits of whether the covenant not to compete is enforceable, Pennsylvania law, which governs the franchise agreement, provides that in order to be enforceable, a covenant not to compete must be: (1) ancillary to the main purpose of a lawful transaction; (2) necessary to protect a party's legitimate interest; (3) supported by consideration; and (4) appropriately limited as to time and territory. See Volunteer Firemen's Ins. Serv's, Inc. v. CIGNA Prop. & Cas. Ins. Agency, 693 A.2d 1330 (Pa. Super. Ct. 1997); Piercing Pagoda, Inc. v. Hoffner, 465 Pa. 500, 351 A.2d 207 (1976). The merits have not been presented to this court in the instant motion.