IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| MCC HUMBLE AUTO PAINT, INC., | ) | CASE NO. 11-34994-H3-11 |
| | ) | |
| Debtor, | ) | |
| | ) | |

## MEMORANDUM OPINION

The court has held an evidentiary hearing on "Creditor Maaco Franchising, Inc.'s Motion to Convert Case to Chapter 7 Pursuant to 11 U.S.C. §1112(b) or in the Alternative to Dismiss Case (Docket No. 51). The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

## Findings of Fact

MCC Humble Auto Paint, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 7, 2011.

On July 18, 2006, James M. Gaarder, president of Debtor, entered into a franchise agreement with Maaco Enterprises, Inc., to open a "Maaco Center," defined under the

franchise agreement as a center "specializing in vehicle painting and body repair," in Humble, Texas.  (Movant's Exhibit A).

Gaarder assigned his rights under the franchise agreement to Debtor on July 18, 2006.  (Movant's Exhibit B).

On January 31, 2011, Maaco Franchising, Inc. (purporting to be the entity with which Debtor had a franchise agreement)[1] gave notice to Debtor and Gaarder that they were in default in, <u>inter alia</u>, paying franchise fees due under the franchise agreement.  (Movant's Exhibit D).

On March 11, 2011, Maaco sent to Debtor and Gaarder a notice of termination of the franchise agreement.  (Movant's Exhibit E).

The franchise agreement provides in pertinent part:

17.   COVENANTS

* * *

> C.  Franchisee covenants that for a period of one (1) year from whichever of the following events occur later: (i) the expiration or termination of this Agreement, regardless of the cause of termination; (ii) the date upon which Franchisee ceases to operate the business franchised hereunder following termination or expiration of this Agreement; or (iii) the date upon which Franchisee complies with this Paragraph 17C., Franchisee shall not either directly or indirectly, for himself or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation:

---

[1] Maaco Enterprises, Inc. and Maaco Franchising, Inc. are collectively referred to for the remainder of this opinion as "Maaco."

>> (1)  Do or engage in any act prescribed by Paragraphs 17B (1) and (2) of this Agreement, which are hereby incorporated by reference as if more fully set forth herein.
>>
>> (2) Own, maintain, engage in, be employed by, finance, or have any interest in any business providing, in whole or in part motor vehicle painting or body repair services or products at the premises of the Center or within a radius of ten (10) miles of the Center or within a ten (10) mile radius of any existing or proposed Maaco location.

(Movant's Exhibit A).

Ted Pearce, Maaco's general counsel, testified that the purpose of the non-compete provision is to protect Maaco from franchisees purchasing a franchise, being trained on how to operate, and then taking down their sign and operating independently, and to protect other franchisees from former franchisees competing against them when they no longer have to pay franchise fees.

Pearce testified that Maaco has had complaints from two franchisees about Debtor's continued operation.  He testified that one of the complainants has a shop he believes is approximately seven miles from Debtor's shop.  He testified that the other complainant is farther away, but he does not know how far it is.  He testified that the complainant that he believes is approximately seven miles from Debtor's shop became a Maaco franchisee after 2009.

Pearce testified that, beginning in 2009, Maaco changed the territorial provision of its contracts with franchisees to reflect that there would be a five mile protected radius.

Pearce testified that he believes the benefits each franchisee gets under the franchise agreement with Maaco include assistance from an "operations representative" to assist with development of the franchisee's business.

Gaarder testified that Debtor's first operations representative was present for a month and a half, and then left, and no new operations representative was assigned until a year later.  He testified that some operations personnel came to work in the shop, but that they had no front office expertise.  He testified that Debtor's second operations representative stayed for one month, and then that Debtor was without an operations representative for the balance of Debtor's second year of operations.

Gaarder testified that Maaco promised to put in place accounting systems, but that the only system they put in place was a sales system.  He testified that the training he received was wholly inadequate for the operation of a paint and body shop.

Gaarder testified that Debtor's arrearage in payment to Maaco arose during the first year of Debtor's operations.  He testified that Maaco pressured him to sign a note to cover the arrearage, and to continue making regular payments for current

4

franchise fees, advertising fees, paint and supplies. Gaarder testified that he signed the note on October 15, 2010.[2] He testified that Maaco's corporate office had told him that Debtor was current on its paint and supplies account at the time he signed the note. He testified that one month after he signed the note, Maaco informed him that Debtor's paint and supplies account was $25,000 in arrears, and stopped selling paint and supplies to Debtor without warning.

Gaarder testified that a Maaco vice president notified Debtor that Debtor's business was considered a failure, and suggested that Debtor negotiate the purchase of paint and supplies from entities other than from Maaco.

Pearce testified that on a monthly basis Maaco's senior executives meet to discuss whether each franchisee is delinquent, what operations representatives have done to work with the franchisee, and the future prospects for each franchisee. He testified that he has had no involvement with Debtor, and had never met Gaarder prior to the hearing on the instant motion.

Pearce testified that when Gaarder signed the note, Maaco took a security interest in Debtor's equipment and inventory. He testified that Maaco has filed a proof of claim in the instant case. He testified that Maaco will vote against and

---

[2]The note is in evidence. (Maaco Exhibit C).

object to any plan which provides for Debtor to continue operating a paint and body shop in its current location.

Gaarder testified that Debtor's business is presently "treading water," and that it has earned a cumulative profit of $2,000 since the instant Chapter 11 case was filed. He testified that November through February is traditionally a slow season. He testified that he anticipates that profits will be larger during the coming months, and that Debtor will be able to propose a plan within a month to provide for the payment of claims in the instant Chapter 11 case.

## Conclusions of Law

Section 1112(b) of the Code governs conversion or dismissal of Chapter 11 cases. Section 1112(b) provides in pertinent part:

> (b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
>
> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this cahpter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that--

6

>> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
>> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--
>
>>> (i) for which there exists a reasonable justification for the act or omission; and
>>> (ii) that will be cured within a reasonable period of time fixed by the court.

> (3) The court shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph.

> (4) For purposes of this subsection, the term 'cause' includes--

>> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>> (B) gross mismanagement of the estate;
>> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
>> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
>> (E) failure to comply with an order of the court;
>> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>> (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
>> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
>> (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

>(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
>(K) failure to pay any fees or charges required under chapter 123 of title 28;
>(L) revocation of an order of confirmation under section 1144;
>(M) inability to effectuate substantial consummation of a confirmed plan;
>(N) material default by the debtor with respect to a confirmed plan;
>(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
>(P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b).

In the instant motion, Maaco asserts two reasons why the case should be dismissed or converted.  Maaco asserts that a plan cannot be confirmed because its non-compete agreement is enforceable and Debtor cannot operate its business due to the terms of the non-compete agreement.  Maaco also asserts that Debtor is unable to effectuate a plan because it has insufficient revenue.

With respect to the non-compete agreement, Pennsylvania law, which governs the franchise agreement, provides that in order to be enforceable, a covenant not to compete must be: (1) ancillary to an employment contract or to a contract for the sale of goodwill or other subject property, (2) supported by adequate consideration, (3) reasonably necessary to protect legitimate interests of the purchaser and (4) reasonable. See <u>Volunteer Firemen's Ins. Serv's, Inc. v. CIGNA Prop. & Cas. Ins. Agency</u>,

693 A.2d 1330 (Pa. Super. Ct. 1997); Piercing Pagoda, Inc. v. Hoffner, 465 Pa. 500, 351 A.2d 207 (Pa. 1976).[3]

Debtor does not dispute that the covenant not to compete was part of the franchise agreement, or that such a covenant is necessary to protect Maaco. Debtor does dispute the adequacy of consideration and whether the restrictions are reasonable.

With respect to the question of consideration, the question is not whether the consideration received by Debtor has a value equal to the value of the covenant not to compete, but rather whether there was any consideration at all. Unless there is a complete absence of consideration, the covenant is enforceable if it meets the other requirements under Pennsylvania law. See Shepherd v. Pittsburgh Glass Works, LLC, 25 A.3d 1233 (Pa. Super. 2011).[4]

---

[3] The court notes additionally that, were the contract governed by Texas law, Texas provides by statute that a covenant is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. Tex. Bus. & Com.Code § 15.50(a). This court would reach the same result under Texas law.

[4] See also Piercing Pagoda, Inc. v. Hoffner, 465 Pa. 500, 351 A.2d 207 (Pa. 1976), holding that the franchise itself is protectible.

On the question of whether a restriction is reasonable in time and territory, Pennsylvania law with respect to covenants not to compete in employment contracts is instructive.[5] Pennsylvania law permits equitable enforcement of employee covenants not to compete only so far as reasonably necessary for the protection of the employer. However, where the covenant imposes restrictions broader than necessary to protect the employer, a court of equity may grant enforcement limited to those portions of the restrictions which are reasonably necessary for the protection of the employer. Sidco Paper Co. v. Aaron, 351 A.2d 250 (Pa. 1976).

In the instant case, a ten mile radius restriction is not reasonably necessary for protection of Maaco or its franchisees. Indeed, Maaco's later franchisees, including the only one located within ten miles of Debtor's location, have only a five mile radius of protected area. The court concludes that, to the extent Debtor's operation violates the covenant not to compete contained in the franchise agreement, the territorial restriction of the covenant not to compete is not reasonable.

With respect to Maaco's contention that Debtor has insufficient revenue to fund a plan, Gaarder's credible testimony is that Debtor anticipates higher revenues, and higher profits, in the coming months. Ultimately, of course, this court will

---

[5] Indeed, Maaco itself cites such authority.

revisit the issue when assessing the feasibility of Debtor's plan. However, the evidence does not support a finding of cause for conversion or dismissal at this time. The court concludes that the instant motion should be denied.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on March 21, 2012.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE